METROPOLITAN LIFE INSURANCE COMPANY *v.* POPE.

4-4420

Opinion delivered November 9, 1936.

*Shouse & Walker,* for appellant.

*Jewell Black* and *Cotton & Murray,* for appellee.

MEHAFFY, J.  The appellant issued to the Commerce Mining & Royalty Company its group policy insuring the employees, and issued to the individual employees certificates, and delivered them to the employer.  On September 26, 1928, Van A. Pope became an employee of the mining company, and would have been entitled to a certificate of insurance on March 26, 1929. The group policy, however, provided that in no case shall an employee be insured under said policy until he has completed an aggregate period of service of six months.  On March 29, 1929, six months after Pope was employed by the mining company, he fell in the mines, became sick, and was never thereafter able to work.  He died on April 1, 1930.

The policy provided that if an employee insured under the plan became wholly and permanently disabled while in the employment of the mining company, before reaching the age of 60 years, by accidental injury or disease and is thereby permanently, continuously, and wholly prevented from pursuing any and all gainful occupations, he would be regarded as a claimant by the Metropolitan Life Insurance Company.

The policy issued provided for the payment of $500 on the death of the insured to his beneficiary, Nellie Pope. It also provided that if an employee should become wholly and permanently disabled while in the employ of the mining company, that the insurance company, six months after the receipt of proof of such disablement, will begin making payments of the amount of the insurance under one of the plans set forth.

The appellee, Nellie Pope, who was beneficiary under the policy, on December 3, 1932, filed suit in the Marion circuit court for $500 for the death of Van A. Pope, and $540 for installments under the disability clause, with interest from insured's death and attorney's fee and penalty. The case was submitted to the jury and it returned a verdict in favor of the appellee for $1,403.80. To reverse this judgment this appeal is prosecuted.

Nellie Pope, the appellee, testified and introduced the certificate. She testified in substance that she was the wife of Van A. Pope; they had five children; that her husband worked for the Commerce Mining & Royalty Company in Oklahoma and carried insurance with the Metropolitan Life Insurance Company; that her husband worked for this mining company for three years, and that her son, Raymond, was also working for the same company; that her husband took sick on the 28th or 29th of March and they brought him to Bruno, Arkansas, on April 3rd; he never worked any more and was not able to be out of the house after that, and died April 1, 1930. The company sent Dr. Weiss to examine him, and appellee made demand on the insurance company for the amount due, and they refused to pay it. They said their doctor reported that he was all right; her husband quit work about the 28th or 29th of March. The mining company took the payment for his insurance out of his checks.

Here the following letter was introduced:

"Miami, Okla.,
"July 30th, 1929.

"Mr. Van A. Pope,
"Bruno, Arkansas.
"Dear Sir:

"We are inclosing herewith a form which it will be necessary for you to have your doctor fill out in order to get your claim for total disability under way. I would suggest that you take it to Dr. Gladden at Western Grove or Dr. Moore at Everton and have them go over you pretty carefully and answer the questions in a definite way so that the insurance company can determine the condition of your health. There will probably also be a medical examiner for the insurance company get in touch with you and examine you also.

"This policy will not pay you very much of a benefit. You had been working for this company only long enough to receive a policy or just a little over six months. The amount of your policy is $500. You will not begin to receive these payments until six months after proof of your claim has been established and then you can collect $9 per month for 60 months or $107 per year for five years. You can also get quarterly payments or on a semi-annual plan at the same rate.

"Suggest that you answer the questions in the first part of the blank. You can have the doctor help you with these questions and sign your statement in ink using your full name. We will supply the employer's statement when you send the blank back.

"Trusting you will give this your prompt attention and that you will call on us for any other information which we can furnish you, we are,
"Yours truly,
"Commerce Mining and Royalty Company,
"By Floyd Newton.
"Use inclosed stamped envelope for return."

Appellee, continuing her testimony, said that she did not know who made the report, and did not know anything about the payment of premiums.

Raymond Pope testified that he is the son of Nellie Pope and Van A. Pope and now lives in Kansas; he and

his father worked for the Commerce Mining & Royalty Company in 1929; his father became sick the last of March, 1929, and came back to Arkansas where he remained, not able to leave his room, until his death. He visited his father after he was carried home, and knows that he was confined to his room and not able to work. The last work he did was the last of March. He testified that it was not in February that his father got sick, but the last of March.

The appellant introduced the group policy and the testimony of Mr. Newton, who testified that during the years of 1928 and 1929 he was employed by the Commerce Mining & Royalty Company as assistant auditor, and looked after the employment records, having charge of the group insurance records; had charge of the records of Van A. Pope during the time he worked for the Commerce Mining & Royalty Company, and that he was familiar with such records. Mr. Pope had worked for the company before, but so far as the certificate involved is concerned, his employment began September 26, 1928, and his policy was canceled on July 29, 1929.

The superintendent of the mining company during the time Van A. Pope, was employed by it, was H. E. Ackley, who is now dead. He was familiar with Mr. Pope's employment record. It was the practice of the mining company to have the policies available for delivery after the employee had been employed for six months. This employee apparently laid off the last two weeks of the fifth month, on account of illness, resuming his employment on the sixth month for two weeks, when he again became ill, and after which he worked no more. Apparently the superintendent, believing the man had worked six months, through error delivered the policy prematurely. The premium was paid on the policy by the mining company, but it would be difficult, if not impossible, to determine the amount. The premiums on all the policies were paid when due; does not know the date of Mr. Pope's death, but he severed his connection with the mining company approximately July 29, 1929. He was not carried on the payroll as being em-

ployed by the mining company subsequent to the *second* week of March.

It is contended first by the appellant that Van A. Pope was never an insurable subject under the terms of the policy, and it is earnestly insisted that Van A. Pope had not worked for the company six months. The testimony of Mrs. Pope and Raymond Pope show that Van A. Pope had worked for six months, and the policy was delivered to him by the superintendent of the mining company, and there is no evidence of fraud or collusion, but the preponderance of the evidence shows that he had worked six months before the policy was delivered to him.

Appellant calls attention to the case of *American National Insurance Company* v. *Hamilton,* 192 Ark. 765, 94 S. W. (2d) 710, in which this court said: ''We cannot make contracts for parties, but must enforce them as they are.''

It is true this court cannot make contracts for the parties, but it is the well settled rule of this court that when a question is submitted to the jury on substantial evidence, that its verdict is binding on this court on that question. This court cannot pass on the credibility of the witnesses nor the weight to be given to their testimony. These are matters for the jury. Not only did Mrs. Pope and Raymond Pope testify that Van A. Pope had worked six months, but this testimony is supported by the action of the superintendent of the mining company, who delivered the policy, which he evidently would not have done if Pope had not been entitled to it. This officer of the mining company who delivered the policy is now dead, and Mr. Newton does not testify that Ackley delivered the policy when he should not have done so, but he testifies that he apparently did. There is, in fact, no evidence tending to show that the policy was delivered before Pope had worked six months, and no evidence contradicting the evidence of Mrs. Pope and Raymond Pope.

Appellant next calls attention to § 27 of Crawford on Group Insurance. That section states that it is sometimes required that employment exist for an aggregate

period of time, such as six months; but the section immediately following the one relied on by appellant, states in effect that this requirement may be waived, and further states: "For instance, where the employer was authorized to receive and transmit applications for individual coverage, and to issue certificates as evidence of such coverage, and the insured named himself as an employee, and the employer, knowing the applicant's status with him, had the certificate issued and accepted his premiums, the insurer was held bound in the absence of fraud or mistake, or accident on the employer's part, although the employee was not actually eligible."

As we have already said, we think the evidence shows here that Pope was eligible, but the superintendent of the employer delivered him the certificate, and the employer accepted his premiums, and there is no evidence of fraud in the record.

Appellant calls attention next to the case of *Arment* v. *Metropolitan Life Ins. Co.*, 8 N. J. Misc. 100, 149 Atl. 35. The policy involved in that case had this provision: "Provided, however, that in no case shall any employee be insured hereunder unless and until he has completed an aggregate period of service of six months." The court stated in that case that the aggregate service was five months. Here the aggregate service was six months.

Appellant next calls attention to the case of *Leach* v. *Metropolitan Life Ins. Co.*, 124 Kan. 584, 261 Pac. 603. In that case the court said: "In the instant case deceased's eligibility lapsed before issuance of the policy. The policy was issued by the defendant under the mistaken idea that the deceased was eligible. The defendant took immediate means to correct the mistake when knowledge of the facts was brought home to it."

In the instant case, as we have already said, Pope was eligible at the time the certificate was delivered to him.

Appellant then quotes from Crawford on Group Insurance, § 29. In support of the text of that section is cited the case of *Arment* v. *Metropolitan Life Ins. Co.*, *supra*. We have already called attention to the fact that

in that case the employee was not eligible because he had not worked six months.

It is next contended by appellant that Pope was not an active employee of the mining company after March, 1929, a year before his death, and that his insurance was automatically and immediately terminated. A section of the policy is then quoted, which is as follows:

"In case of termination of employment with the employer, for any cause whatsoever, such employee shall be entitled to have issued to him by the company, without further evidence of insurability, and upon application to the company within 31 days after such termination of employment, and upon payment of the premium then applicable to the class of risk to which he belongs and to the form and amount of the policy at his attained age, a policy of life insurance in any of the forms customarily issued by the company."

It is contended that under the above section the employment was terminated and that the insurance was automatically and immediately terminated. Appellant calls attention to the case of *Ætna Life Insurance Co.* v. *Carroll,* 188 Ark. 154, 65 S. W. (2d) 25. In that case there was no question about the fact that the employment had terminated. That certificate contained this clause: "Said policy provides for termination of insurance whenever the insured ceases to be in the employ of the employer." The court said: "The undisputed proof shows that Thomas P. Carroll worked for Terry Feed Stores, Inc., up to and including May 31, 1932, at which time he was discharged as store manager at 23rd and Arch streets, Little Rock, but that he worked as checker thereafter on June 4 and June 11."

The company in that case collected premiums for May, but did not collect any premiums for June. Carroll was clearly discharged and his insurance terminated. Pope was not discharged, and his employment had not terminated in the sense of the policy. He had become ill while at work.

In the case of *Ætna Life Ins. Co.* v. *Castle,* 252 Ky. 228, 67 S. W. (2d) 17, the court said: "There is no merit in the contention that the policy was cancelled because

of the unexplained absence of plaintiff for a period of more than ten days. No case of unexplained absence was presented. The uncontradicted evidence shows that at the instance of the coal company plaintiff was examined by physicians and was laid off on August 29, 1930, on account of his disability, all of which was known to the coal company." The court also said: "alike untenable is the contention that the insurance was no longer in force because plaintiff left the company's employ on August 29, 1930, and did not resume his employment until December 17, 1930. Prior to that time, and while the policy was still in force, he had received the injuries resulting in his disability. He was not finally discharged, but was merely laid off, and resumed his employment without again signing the compensation register. It would hardly comport with a fair construction of the policy to hold that one who had received injuries resulting in his disability while the policy was in force, and was temporarily laid off on account of such disability, was no longer in the service of his employer, and therefore not entitled to the benefits of the contract." *Prudential Ins. Co. of America* v. *Sweet,* 253 Ky. 643, 69 S. W. (2d) 748.

Pope became ill while he was in the employ of the company and when the policy was in force. He was not discharged, and it would not be a fair interpretation of the policy to hold that his employment and also his insurance terminated when he became ill. Besides that, the policy itself contradicts this idea. It provides for payments for permanent disability, and, of course, if he was permanently disabled, he would not be at work.

It, therefore, appears clear from the evidence that Pope was entitled, under the policy, to the payments provided for disability; but he did not receive any payments during his lifetime. Mrs. Pope testified that the insurance company denied liability, and their contention here is that there is no liability; first, because he had not been in the employ of the mining company six months, and second, because he did not apply for another policy within 31 days. Under the evidence in this case he was not required to apply for another policy. Liability attached when the disability occurred.

It is next contended that there is no proof of disability or death; that is, no proof was ever furnished the company. The evidence shows that the company knew about his illness, had a physician to examine him, and stated that he was not disabled. In addition to this the appellant's witness testified that his policy was cancelled on July 29, 1929, although the same witness wrote him on the 30th of July, after he says the policy was cancelled, the letter above set out. If his policy was cancelled, there would be no use in his making an application for another policy, nor making any proof at all, although the company had notice not only of his disability, but of his death. Of course, the company had no right to cancel his policy after his disability accrued. It evidently did it, however, on the theory that he had not worked for the company for six months prior to the time the policy was issued.

It is next contended that there could be no recovery for the total disability and death, and that the verdict of the jury is excessive. While he was entitled to disability benefits, we think she was clearly entitled to recover for his death, but as we interpret the policy, she was not entitled to recover for the death and disability benefits.

It follows that if she cannot recover the full amount of both claims she is not entitled to attorneys' fees and penalty. The judgment of the circuit court is affirmed for $500 with interest at 6 per cent. from April 1, 1930, and is reversed as to attorneys' fees and penalty, and the judgment for disability benefits, and the cause as to these dismissed.

It is so ordered.