LANIER *v.* TRAMMELL.

4-7374                                                    180 S. W. 2d 818

Opinion delivered May 29, 1944.

374

Ben Shaver, Bert B. Larey and Sherrill, Cockrill & Wills, for appellant.

Steel & Edwardes and T. B. Vance, for appellee.

ROBINS, J. Appellant, an eye specialist, of Texarkana, Arkansas, prosecutes an appeal from judgment against him for $5,000 rendered by the circuit court and based on a jury's verdict in a suit brought by appellee against appellant for damages for alleged malpractice resulting in the loss of vision of appellee's left eye.

These grounds for reversal are urged by appellant: (1) That the testimony was insufficient to support the verdict. (2) That the trial court erred in giving appellee's requested instruction No. 1, and in refusing to give appellant's requested instructions Nos. 1, 4, 5, 8, 9, 10, 12, 13, 14 and 16.

I.

Appellee consulted appellant in regard to a growth, called a pterygium, in the corner of appellee's left eye. He was advised by appellant that this growth should be removed, and that the needed operation was a simple one. Appellee, accompanied by his aunt, Mrs. Nellie Blanton, and two other relatives, went to the office of appellant to have the pterygium removed. In the room at the time the operation was performed there were, besides appellant and appellee, Mrs. Blanton and a negro maid employed by appellant, all of whom, except the maid, testified. Other witnesses were Drs. Fuller and Kirkpatrick, eye specialists of Texarkana, who testified on behalf of ap-

pellant and appellee, respectively, Miss Willie Blanton, Miss Hazel Trammell, Della Williams, Mrs. Grace Geyer, and Clint Barrett.

These facts, concerning which there is no controversy, were established by the testimony:

(1) That the operation which appellant performed on appellee was a minor one which, when properly performed, was ordinarily not followed by the result which occurred in this instance.

(2) That for a surgeon to operate on an eye without washing his hands and sterilizing his instruments would constitute negligence.

(3) That an infection in the part of the body operated on might result from the use of an unsterilized instrument.

(4) That appellee suffered a severe infection in his eye following the operation and has sustained some loss of vision. No complaint as to excessiveness of the verdict is urged here.

There is a conflict in the testimony as to these important phases of the matter:

(1) As to the failure of appellant to sterilize his instruments and wash his hands before the operation. Appellee and Mrs. Blanton testified that appellant whetted his instrument on a stone and then used it in appellee's eye without sterilizing the instrument or washing his hands. This was denied by appellant.

(2) As to the custom of surgeons relative to sharpening their instruments. Appellant and Dr. Fuller testified that these instruments were not sharpened by the operators, but came from the manufacturer already sharpened and in sealed packages. Dr. Kirkpatrick, an eye specialist practicing in the same city, testified that he sharpened his instruments prior to an operation.

(3) As to the manner in which appellee's eye may have become infected. Appellant testified that he saw no evidence of infection in appellee's eye when he performed

the operation, and his belief was that appellee, after the operation, had taken the bandage off, suffered a fall or gotten a lick, which caused the infection. Appellee and other witnesses denied that any such incident had occurred. Dr. Fuller, introduced as a witness by *appellant* was of the opinion that the infection which caused loss of vision in appellee's eye was probably in existence at the time of the operation.

In considering the question of the correctness of the action of the lower court in refusing to direct peremptorily a verdict for appellant and in refusing to set aside the verdict of the jury in favor of appellee, we must bear in mind these fundamental rules:

(1) This court on appeal from a judgment based on a jury's verdict does not pass on the credibility of witnesses. That function is one solely to be exercised by the jury, whose decision as to credence to be given to testimony (except as to testimony contrary to scientific knowledge and mathematical facts) is binding on this court. *Mains* v. *State,* 13 Ark. 285; *Turner* v. *Huggins,* 14 Ark. 21; *Malone* v. *Collins,* 112 Ark. 269, 165 S. W. 641; *St. Louis S. W. Ry. Co.* v. *Aydelott,* 128 Ark. 479, 194 S. W. 873; *Fair Store No. 32* v. *Hadley Milling Company,* 148 Ark. 209, 229 S. W. 727; *Gaster* v. *Hicks,* 181 Ark. 299, 25 S. W. 2d 760; *Greenlee* v. *Rolfe,* 187 Ark. 1162, 60 S. W. 2d 568; *Browne* v. *Dugan,* 189 Ark. 551, 74 S. W. 2d 640; *Metropolitan Life Insurance Company* v. *Pope,* 193 Ark. 139, 97 S. W. 2d 915.

Judge BUTLER, in the case of *Arkansas Power & Light Company* v. *Kennedy,* 189 Ark. 95, 70 S. W. 2d 506, said: "In discussing the plaintiff's testimony, certain discrepancies in the account he gave of the occurrence are suggested which tend to discredit his testimony, and circumstances are argued which, it is claimed, cast doubt on the testimony of the witness Bell. The matters argued are not properly for our consideration, but were for the jury, and doubtless were presented to, and considered by it. The jury having resolved these questions in favor of the plaintiff, under settled rules we must accept its conclusion as final."

(2) Where the verdict is supported by any substantial testimony it must, in absence of prejudicial errors of the trial court, be upheld; and in determining whether there is substantial testimony to support the verdict the evidence must be given the strongest probative force in favor of the party obtaining the verdict that it will reasonably bear. We said in the case of *Harris v. Bush, Receiver,* 129 Ark. 369, 196 S. W. 471: "This court is irrevocably committed to the doctrine that it will not interfere with verdicts supported by any substantial evidence; and in arriving at whether the verdict is supported by substantial evidence, the strongest probative force will be given to the testimony, and every reasonable inference deducible therefrom, in favor of the party receiving the verdict." This rule has been adhered to throughout the history of the court.

We conclude that, when the testimony in this case is considered in the light of these rules, it must be held that a fact question for the jury was presented by the evidence and that the jury's verdict is supported by substantial testimony.

In support of his argument that the evidence is insufficient to justify the verdict, appellant points out that appellee's charge of negligence against appellant is not supported by the testimony of any expert witnesses. It is appellant's contention that in a case of this kind negligence cannot be established except by witnesses who are skilled in the profession involved. If there could, under the testimony, be any dispute as to the method used in the operation or in the treatment of the patient it would be necessary to establish the correct method by expert witnesses, but we do not have that situation here. There was no dispute whatever as to what was the proper course to be pursued by appellant in preparing for and performing the operation. It was not denied that it was necessary and proper for appellant to cleanse his hands thoroughly and to sterilize his instruments. The dispute in this case was as to whether or not appellant followed the course which is conceded to be necessary and proper. Appellant says that he did and appellee and one of his witnesses testified that he did not follow this course. No

amount of expert testimony could have thrown any light whatever on the real question in this case.

A somewhat similar situation was presented to the court in the case of *Ellering* v. *Gross,* 189 Minn. 68, 248 N. W. 330, in which the Supreme Court of Minnesota said: "Defendant contends that he is entitled to judgment notwithstanding the verdict on the ground that there is no evidence upon which the jury could find him liable. He raised the proposition by proper motions at the trial and after the verdict. He rests his contention, in part at least, upon these instructions given at his request: '1. The question as to whether the defendant was negligent in treating the plaintiff is whether he used that degree of care and skill used by dentists in the same and similar localities. This is a scientific question to be determined from the expert testimony of dentists qualified to speak as experts, and the jury must base its finding upon the testimony by the dentists herein relative thereto. . . . We think the second sentence of the first instruction is not applicable to all malpractice cases, for the reason that the acts claimed to be malpractice may be of such a nature that laymen may be able to decide whether or not they are such without the aid of expert opinion. This was stated in *Getchell* v. *Hill,* 21 Minn. 464, and has since been recognized, as shown by the citations in *Bush* v. *Cress,* 181 Minn. 590, 233 N. W. 317. . . . The Court of Appeals also refers to *Evans* v. *Roberts,* 172 Iowa 653, 154 N. W. 923, 926, where, in removing adenoids, an instrument used by the surgeon cut off a part of the patient's tongue. The court said: 'If we understand counsel correctly, it is their contention that negligence in cases of this nature can be established only upon the testimony of competent experts. What may be the rule where the sole question is upon the treatment of the diseased part, and whether it was in accordance with approved and medical standards, we need not here decide, for, as we have already noted, this is not a case of that kind. The jury here did not have to consider whether the method of the defendant in removing the adenoids was correct or scientific, but whether the unintentional wounding of plaintiff's tongue was occasioned by lack

of reasonable care on his part. This, it would seem very clear, involves no question of science, or necessarily of expert knowledge.' *Prevey* v. *Watzke,* 182 Minn. 332, 234 N. W. 470; *Johnson* v. *Arndt,* 186 Minn. 253, 243 N. W. 67.''

It was urged by the physician defendant in the case of *James* v. *Robertson,* 39 Utah 414, 117 Pac. 1068, that the judgment against him should be reversed because there was no expert evidence upon which a jury could base a finding that the physician was negligent in performing the operation. In answering this contention the court said: ''It is true, as appellant's counsel suggests, that in order to authorize a finding that one who is following a profession or calling requiring special skill, knowledge, and experience is guilty of negligence or unskillfulness it is necessary to furnish some proof from some source possessing the required skill, knowledge, and experience that the acts complained of did not measure up to the standard of skill, knowledge and experience required in the particular calling or profession. In this case, however, the principle cannot be applied to its full extent, for the reason that appellant did not come into court justifying his act or conduct; that is, he does not claim that, if he permitted a solution of carbolic acid to come in contact with the cornea of respondent's eye, in doing so his conduct was justified by the ordinary and usual methods which are pursued by those of his profession under like circumstances. In other words, appellant does not claim protection because he has conformed to the standards of his profession. What he really contends for in this connection is: (1) That no part of the solution he used was through any act of his permitted to enter respondent's eye, and hence he was not negligent in that regard; (2) ·that, although it were conceded that some of the solution did enter respondent's eye, yet the solution was not of sufficient strength to produce the injury complained of; and (3) that the result to the eye was produced by a cause or causes for which he was not responsible. It is apparent that most, if not all, of the conclusions involved in the foregoing propositions do not necessarily call for expert evidence.''

In the case of *Russell* v. *Newman,* 116 Kans. 268, 226 Pac. 752, a patient had sued his surgeons for negligence in leaving surgical gauze in an incision made for removing a kidney. The jury returned a verdict for one dollar in favor of the patient from which he appealed. The Supreme Court of Kansas reversed the judgment of the trial court entered on the verdict. In discussing the contention that a charge of malpractice must always be established by expert testimony the court said: "The rule that the testimony of witnesses skilled in medicine and surgery is necessary to determine whether specified acts constitute malpractice is subject to some qualification. For instance, it is said: 'Probably the most common instance of malpractice which is brought into the courts arises out of surgical cases where the physician or attendant has left a sponge in the wound after the incision has been closed. That this is plainly negligence there is no doubt at all, and it matters not at all that many physicians testify that the best of surgeons sometimes leave a sponge or some other foreign substance in the bodies of their patients, for this is testimony merely to the effect that almost every one is at times negligent.' 21 R. C. L. 388.

"In a recent case having some features in common with the present one the court said: '. . . Jurors of ordinary intelligence, sense, and judgment, although not skilled in medical science, are capable of reaching a conclusion without the aid of expert testimony as to whether it is good surgery to permit a wound to heal superficially with nearly half a yard of gauze deeply imbedded in the flesh, and likewise are capable of determining whether or not injurious consequences of some character would probably result. The exact nature and extent of the evil consequences resulting therefrom, of course, laymen would not be competent to determine without the aid of medical science.' *Walker Hospital* v. *Pulley,* 74 Ind. App. 659, 127 N. E. 559, 128 N. E. 993."

In the case of *Barham* v. *Widing,* 210 Cal. 206, 291 Pac. 173, one of the grounds urged for reversal of judgment against a dentist for malpractice was that there was no expert testimony to establish negligence on the part of

the dentist. Denying this contention the court said: " 'It was not necessary for any dentist or physician to state that the conduct of the defendant was negligent or in conflict with the usual established practice of the profession in that vicinity to administer a local anaesthetic for the purpose of extracting a tooth without sterilizing the needle or the flesh into which it is inserted. The court will take judicial knowledge of the necessity to use ordinary care to procure sterilization under such circumstances. This case was tried upon the theory that everyone concerned recognized this duty. We are, therefore, of the opinion that the evidence will support the judgment in this regard.' "

Lack of medical testimony to sustain a verdict in favor of a patient against a dentist for malpractice was urged as ground for reversal in the case of *Zettler* v. *Reich*, 266 App. Div. 631, 11 N. Y. S. 2d 85 (affirmed by Court of Appeals, 281 N. Y. 729, 23 N. E. 2d 548). The court, in affirming the judgment of the trial court, said: "Expert evidence is not required where the results of the treatment are of such a character as to warrant the inference of want of care from the testimony of laymen or in the light of the knowledge and experience of the jurors themselves. *Benson* v. *Dean*, 232 N. Y. 52, 133 N. E. 125; *Dietz* v. *Aronson*, 244 App. Div. 746, 279 N. Y. S. 66; *Pelky* v. *Kivlin*, 199 App. Div. 114, 191 N. Y. S. 428; *Evans* v. *Roberts*, 172 Iowa 653, 154 N. W. 923; *Vergeldt* v. *Hartzell*, 8 Cir., 1 F. 2d 633; *Eichholz* v. *Poe*, Mo. Sup., 217 S. W. 282."

Our conclusion that we are not required to set aside the verdict of the jury in this case because of lack of medical or expert testimony to support it is not in conflict with anything said in our opinion in the case of *Gray* v. *McDermott*, 188 Ark. 1, 64 S. W. 2d 94. In that case it was insisted by the complaining party that the surgeon in operating had failed to do certain things that he should have done. The surgeon and the expert witnesses testified in that case that the surgeon operated in an approved and skillful manner, and that it would not have been proper for the surgeon to have done the things, the omission of which was claimed to amount to negli-

gence. It was held in that case that a jury should not be permitted to "speculate whether or not the experts in the practice of their profession have pursued the proper course of procedure." We have no such situation in the case at bar. The question here is not whether appellant in operating followed the approved and skillful method in doing so, but whether or not, prior to the operation, he sterilized his instruments and cleansed his hands. The jury found that he did not do so. No amount of expert or medical testimony as to the proper or improper method of operating would have thrown any light on this question, which was the sole question in litigation.

It is further contended by appellant that, even if it be conceded that appellant failed to sterilize his instruments and to wash his hands, this is not sufficient upon which to base a finding that such negligence was the proximate cause of the infection which caused the injury to appellee's eye. It is not required in a case of this kind that the injured party show to a mathematical certainty or to the exclusion of every other hypothesis that his injury occurred as a result of the negligence of which he complains.

Dr. Herzog, in his "Medical Jurisprudence," discussing the *quantum* of proof necessary to sustain a recovery for malpractice, lays down this rule (pp. 161, 162, § 186): "It is not necessary to prove beyond a shadow of a doubt that an injury was caused by negligence preceding it, but a showing of strong probability of the causal relation is sufficient. . . . Where negligence and injury are proved, a causal connection between them may be established by circumstantial evidence, by inferences from physical facts."

In the case of *James v. Robertson, supra,* it was sought to reverse a judgment for malpractice against an eye specialist. The plaintiff claimed to have lost sight in the right eye, due to negligence of the physician in spilling an acid in her eye, while removing a cyst from the eyelid. It was urged on behalf of the physician that the evidence did not establish negligence on his part. The court, in denying this contention, said: "In a case where

the question is whether the defendant was guilty of negligence or not, the plaintiff need, however, merely show a state of facts from which the jury may logically infer negligence; and if the jury believe plaintiff's evidence from which the inference of negligence may be deduced it may be, and ordinarily is, sufficient to sustain a finding of negligence; and this is so, even if the defendant disputes all of plaintiff's evidence, or produces evidence from which the jury might find that the injury complained of was due to a cause or causes for which the defendant was not responsible.''

In the case of *Barham* v. *Widing, supra,* Mrs. Barham and her husband recovered judgment against Widing, a dentist, for alleged malpractice upon Mrs. Barham which consisted of failure to sterilize a hypodermic needle used to inject novacaine, a local anaesthetic, into the gum of the patient. Among other grounds for reversal, it was urged that the evidence did not establish that the infected condition of the patient's gum resulted from the alleged use of the unsterilized needle by appellant. Overruling this contention, the court said: '' 'Under the circumstances of this case there is a remote possibility that the infection developed from some cause other than the defendant's failure to sterilize the needle or the gum into which it was inserted, but the evidence is sufficient upon which to warrant the jury in finding that it was caused by his negligence in failing to follow these reasonable precautions in spite of his testimony to the contrary. The jurors were entitled to accept the solution to which these circumstances led them in preference, even, to the positive statements of the defendant and his nurse to the contrary. After the verdict of a jury has been fairly rendered, all the circumstances of the case, together with every reasonable inference which may be drawn therefrom, will be marshaled in support of the judgment. Because of the very subtleness of the origin and development of disease, less certainty is required in proof thereof. As the court says in the case of *Dimock* v. *Miller,* 202 Cal. 668, 262 P. 311: 'If . . . it is necessary to demonstrate conclusively and beyond the possibility of a doubt that the negligence resulted in the injury, it would

never be possible to recover in a case of negligence in the practice of a profession which is not an exact science.' It is not necessary in the trial of civil cases that the circumstances shall establish the negligence of the defendant as the proximate cause of injury with such absolute certainty as to exclude every other conclusion. It is sufficient if there is substantial evidence upon which to reasonably support the judgment. *Ley* v. *Bishopp,* 88 Cal. App. 313, 263 P. 369.' "

. Sustaining a recovery by a patient against a physician for an injury alleged to have been caused by an infection brought on by the use of an unsterilized instrument the Supreme Court of Washington, in the case of *Hellen* v. *Bridenstine,* 55 Wash. 470, 104 Pac. 626, said: "Respondent was not required to prove her case beyond a reasonable doubt nor by direct and positive evidence. It was only necessary that she show a chain of circumstances from which the ultimate fact required to be established is reasonably and naturally inferable."

In *Whetstine* v. *Moravec,* 228 Ia. 352, 291 N. W. 425, a suit against a dentist for malpractice, the trial court directed a verdict in favor of the dentist. The plaintiff claimed that after the defendant had extracted certain teeth he suffered with pains in his chest and coughed and finally, about ten months after the extraction, he coughed up the root of a tooth, which was seen by a friend and several members of his family. Overruling the dentist's contention that the evidence failed to show that his negligence was the proximate cause of plaintiff's injury, the Supreme Court of Iowa said: "Both negligence and proximate cause are questions of fact for the jury if the evidence is of sufficient weight and character to warrant their submission. In a civil case they need be established only by the preponderance or greater weight of the evidence, and not beyond a reasonable doubt. And this is true whether the testimony be direct or circumstantial. No different rule is applied in the establishment of these facts than is ordinarily applied in the establishment of any other fact in a civil action."

In the case of *Boucher* v. *Larochelle,* 74 N. H. 433, 15 L. R. A., N. S., 416, 68 Atl. 870, the Supreme Court of New Hampshire refused to allow exceptions of physician sued for malpractice to action of lower court in denying his motion for nonsuit. The malpractice charged was negligence in administering chloroform (prior to operation to set a child's arm) resulting in the death of the child. The court said: "But the defendant contends that, conceding that there was some evidence of the character stated, the conclusion that the death resulted from the negligence proved would be a mere surmise or conjecture, because it appeared from the evidence that the mere administration of chloroform to persons in a certain rare and obscure pathologic condition is sufficient to cause death, and that the fracture of a bone may cause a fatal embolism. The claim is that the death of the child may have been due to its condition, or may have been the direct result of the fracture and that therefore the plaintiff failed to prove that the defendant's negligence was the cause of death. Using the word 'proof' in the sense of demonstration to an absolute certainty, the defendant's contention could probably be sustained. Questions capable of exact demonstration are rarely the subject of litigation. No such burden rested on the plaintiff. He was not bound to exclude all possible causes of death. He was required only to make it more probable than otherwise that the fact was as he claimed it. The rule of *Deschenes* v. *Concord & M. R. Co.,* 69 N. H. 285, 46 Atl. 467, that the jury cannot be permitted to determine by guess or conjecture between two equally probable causes of the injury, for one only of which the defendant is responsible, has no application unless the existence of a sufficient cause or causes for the injury, aside from the negligence charged, is conceded or conclusively proved. Whether the child's condition was such that the mere administration of chloroform was a sufficient cause of the fatal result, or whether an embolism resulting from the fracture was the cause of the injury, are questions of fact upon which the case discloses little, if any, evidence. If there was evidence tending to establish either cause, it must be assumed in the present posture of the

case that the jury were properly instructed as to the legal effect, in the decision of the controversy submitted to them, if they found either contention sustained. It is common knowledge that death does not ordinarily follow the proper administration of an anaesthetic, or immediately result from a fractured humerus."

In this case it was shown by testimony (accepted as true by the jury) that appellant failed to wash his hands and to sterilize his instruments before operating on appellee's eye. It was undisputed that this was negligence. It was undisputed that a serious and unusual infection followed the operation. Since it appeared that all the causes for this infection, which were suggested by appellant and his expert witness, were excluded by testimony which the jury had a right to believe, we conclude that the jury was authorized to find that the infection in appellee's eye was caused by the negligence of appellant.

## II.

The trial court gave only this instruction permitting recovery by appellee:

"If you find from a preponderance of the evidence in this case that the defendant, Dr. L. H. Lanier, in performing the operation upon the eye of the plaintiff, James Trammell, negligently failed to sterilize properly and cleanse his hands and the instruments with which he operated and that such negligence was the proximate cause of an infection in the eye of James Trammell, the plaintiff, and that as a result thereof, the plaintiff lost the sight of his eye, then you are instructed to find for the plaintiff."

The court refused nine instructions requested by appellant, but gave the following at appellant's request:

### No. 2

"You are instructed that a physician is not required to exercise the highest possible skill, but is only bound to possess and to exercise that degree of skill and learning ordinarily possessed and exercised by members of the profession in good standing, practicing in the same line

and in the same general neighborhood and to use reasonable care in the exercise of his skill, and unless you find from the evidence that the defendant herein failed to possess and exercise such skill, learning and care your verdict must be for the defendant regardless of the result of the treatment.''

## No. 3

''You are instructed that the defendant was not required to effect a cure of the plaintiff by his treatment, and is not a guarantor of results. He was only required to possess and exercise ordinary care and skill in the treatment of the plaintiff and if you believe from the evidence that the defendant possessed and exercised such care and skill the plaintiff cannot recover in this action.''

## No. 6

''You are instructed that no negligence on the part of the defendant is shown by the testimony in diagnosing and advising plaintiff that the operation was simple and safe and in failing to hospitalize plaintiff for the performance of the operation and your verdict will be for the defendant on that issue.''

## No. 7

''You are instructed that no negligence is shown by the testimony that the defendant improperly treated plaintiff after discovering the infection and that he failed to hospitalize plaintiff, and you will find for the defendant on this issue.''

## No. 11

''You are instructed that there is no evidence to sustain a finding that the operating chair must be sterilized in the exercise of reasonable and ordinary care by the defendant, and you must find for the defendant on this issue.''

## No. 15

''You are instructed that there is no evidence to sustain a finding that defendant was negligent in failing to call in a consulting physician for the operation and after

treatment, and your verdict will be for the defendant on this issue.''

## No. 17

''You are instructed it was plaintiff's duty to follow. the reasonable instructions prescribed by defendant, and if you believe from the evidence he failed to do so and that his condition was the result of his own negligence, however slight, he cannot recover in this action.''

## No. 18

''You are instructed that if you believe from the evidence that on August 11, 1943, that the plaintiff came to the defendant for treatment of a growth on his left eye and on the same day at his request the defendant, in the exercise of his best judgment, performed the McReynolds operation under approved aseptic surroundings for the removal of the growth, exercising the degree of care, skill and learning ordinarily possessed and exercised by doctors in the locality of Texarkana; that on August 13 the patient returned for treatment and dressing, and at the patient's request he went to a hotel where the doctor saw and treated him in the exercise of his best judgment every day to August 17; that when he saw the patient again on August 18, he gave him written instructions for proper treatment at home until August 21, and thereafter treated the patient, in the exercise of his best judgment at his office every third day through September 21, when the patient failed to come for further treatment, then you are instructed that the defendant is not liable for the results of the operation and treatment of plaintiff, and your verdict must be for the defendant.''

It cannot be said that the one instruction on liability given at the request of appellee was erroneous. The instructions given by the court at the request of appellant properly and fully submitted to the jury.every theory of defense which appellant was entitled.to urge. We have examined the instructions refused and do not find that the refusal of the court to give any of them was prejudicial to appellant.

The judgment of the lower court is affirmed.

The Chief Justice and McHaney and Holt, JJ., dissent.